(September 26, 1916.)

## POTLATCH LUMBER COMPANY, a Corporation, Appellant, v. THE BOARD OF COUNTY COMMISSIONERS OF LATAH COUNTY, STATE OF IDAHO, Respondent.

### [160 Pac. 256.]

GENERAL PROPERTY ROAD TAX—WHERE EXPENDED—COLLECTION OF TAX —APPORTIONMENT OF TAX—SPECIAL ROAD LEVY—PETITION FOR BY RESIDENT TAXPAYERS—DISCRETION OF BOARD—PROCEEDS OF—WHERE EXPENDED.

1. Under the provisions of sec. 882, Rev. Codes, it is the mandatory duty of the board of county commissioners to levy a property road tax to be paid into the county road fund, and under the provisions of sec. 99, Sess. Laws 1913, page 203, boards of county commissioners in this state must levy annually upon all the taxable property in their respective counties a tax for general county purposes, and upon the same property and for the same year the board must also levy for general road purposes, to be collected and paid into the county treasury and apportioned to the county road fund, which levy shall not exceed twenty-five cents on each one hundred dollars of such assessed valuation.

2. Subd. 6 of sec. 882, Rev. Codes, provides that at least twenty-five per cent of the fund collected in any road district must be expended within the district in which such fund was collected.

3. Under the provisions of sec. 900, Sess. Laws 1913, page 524, the tax for general road purposes must be levied by the board of county commissioners at their session when the tax is by them levied for county purposes, and must be collected by the same officers and in the same manner as other state and county taxes are collected, and paid into the county treasury and apportioned to the county road fund, except that twenty-five per cent of that portion of such tax which shall have been levied upon property within the limits of any incorporated city, town or village must be apportioned to such city, town or village, for the road fund of such city, town or village, and if there be within the county any taxing district organized under any law of this state providing for the apportionment of any portion of such tax to such taxing district, that portion of such tax which may have been levied upon property within the limits of such taxing district shall be paid and applied as provided in such law.

4. Where the resident taxpayers of any road district within a county desire a special road levy, in addition to the general levy made by the board of county commissioners for road purposes on the assessed valuation of all of the taxable property in the county, in order to provide for a greater degree of improvement than would be made possible by the general levy, said resident taxpayers may petition the board of county commissioners for such special levy. Under the provisions of sec. 901, Sess. Laws 1913, page 522, the granting of said petition and the making of said special levy are discretionary with the board of county commissioners.

5. Boards of county commissioners, in making a general levy for road purposes, are not authorized, neither is it their duty to take into consideration petitions filed with them for special levies by a majority of the resident taxpayers of any road district in their respective counties, petitioning such board under the provisions of sec. 901, Sess. Laws 1913, page 522. The proceeds of any such special levy for road purposes, when granted, are to be expended only within the district or for the benefit of the district from which they were collected, and should not be considered by boards of county commissioners in making a just and equitable distribution to the various road districts of the moneys paid into the county treasury under the general levy made upon the assessed valuation of all of the taxable property in their respective counties for road purposes.

[As to validity of statute in assessing cost of construction or repair of rural highway on land benefited, see note in **Ann. Cas. 1913D, 550.**]

APPEAL from the District Court of the Second Judicial District for Latah County.  Hon. Edgar C. Steele, Judge.

Application for writ of mandate in the lower court to compel the board of county commissioners of Latah county to levy a general property tax for road purposes.  Peremptory writ denied.  *Reversed.*

A. L. Morgan and E. C. Boom, for Appellant.

The authorities are uniformly to the effect that not only can a board be required to levy a tax provided by law for a certain purpose, but that it may be compelled by *mandamus* to levy a sufficient tax.  (*City of Lexington v. Board of Education* (Ky.), 65 S. W. 827.)

If the law could be construed as contended for by respondent, it would be unconstitutional, not only because the duty imposed upon them could not be performed, but also, if it could be performed, the taxation for a general purpose could not be made general and uniform, and the property of a district cannot be subjected to a special tax for a general county purpose. (*Graham v. Conger,* 85 Ky. 583, 4 S. W. 327; *Sperry v. Flygare,* 80 Minn. 325, 81 Am. St. 261, 83 S. W. 177, 49 L. R. A. 757; *Hammet v. Philadelphia,* 65 Pa. St. 146, 3 Am. Rep. 615; *Hutchinson v. Ozark Land Co.,* 57 Ark. 554, 38 Am. St. 258, 22 S. W. 173; *Dorgan v. Boston,* 12 Allen (Mass.), 223; 2 Cooley, Taxation, pp. 1153, 1161, 1179.)

Only one general road system of taxation can be in force in a county at a time. (*Wright v. Sheppard,* 5 Ga. App. 298, 63 S. E. 48.)

Frank L. Moore, for Respondent.

The contention of appellant has been disposed of by this court in the case of *Humbird Lbr. Co. v. Kootenai Co.,* 10 Ida. 490, 79 Pac. 396. The statute under consideration in that case (Act of March 5, 1901, Sess. Laws 1901, p. 78) is identical in scope and principle with sec. 901, Rev. Codes, as amended by the legislature in 1913 (Sess. Laws 1913, p. 522). The only difference is that under the latter act the special tax is initiated by a petition of a majority of the resident taxpayers of a road district to the county commissioners, asking for a special property road tax within a limited rate instead of by the board of county commissioners, and the petitioners may request that said special tax, when so levied, may be paid by labor upon the highways in their district.

Sec. 901 of the Rev. Codes is an amendment of the act of March 5, 1901. This section was amended by the legislature in 1911, and again in 1913.

Sec. 901 as amended should be read *in pari materia* with other sections of the statute, relating to the raising of revenue for general road purposes.

The reasoning of the court in that case applies with equal force in the case at bar, for the reason that the amount of revenue to be raised for road purposes and the places where the same shall be expended in establishing, maintaining and repairing the roads, with one single exception, is entirely within the discretion of the board of county commissioners. The exception is that twenty-five per cent of the revenues collected in each road district must be expended in that district. Even then, under the present law, the commissioners have the power and authority to direct where, within the district, any improvement or repair procured by this portion of the revenue shall be made.

BUDGE, J.—This proceeding was brought for the purpose of procuring a writ of mandate to compel the board of county commissioners of Latah county to levy a general property tax on the assessed valuation of all of the taxable property in Latah county for the maintenance and improvement of the established public roads and highways within the county.

From the record in this case, among other things, the following facts appear: For many years past the board of county commissioners of Latah county has failed and refused to levy a general property tax for road purposes on the assessed valuation of all of the taxable property in said county, except for such an amount as they found necessary for the establishment and laying out of new roads, the purchase of road machinery, and the payment of the salary of road overseers. It also appears that the commissioners have taken the position that the cost of the maintenance and improvement of the public roads and highways within the county must be met by special assessment upon petition filed with the board by a majority of the resident taxpayers within each road district, provided the resident taxpayers in such road district shall deem it necessary, in order to properly maintain and improve the public roads and highways within such districts; and unless the resident taxpayers so petition for the levy of a special property tax upon the taxable property within their district for the above purpose, it was not incumbent upon, nor

the duty of, the board of county commissioners to provide funds for the maintenance or improvement of the public roads or highways within any of the road districts of said county, by the levying of a general property tax for that purpose. In other words, the commissioners took the position that if they, by a general levy for road purposes, provided sufficient funds to pay for the necessary machinery, the salary of road overseers, and the establishment and laying out of new roads, they thereby fully complied with the law fixing their duties in so far as the public roads and highways within the county were concerned.

Upon the complaint and affidavit of the appellant herein, setting forth in substance the above matters, an alternative writ of mandate was issued by the district judge of the second judicial district, directed against the respondents, the board of county commissioners of Latah county, commanding them to levy on or before the third Monday in September, 1916, a sufficient tax upon all the taxable property in Latah county, to provide for all of the general road purposes in said county, including the necessary working, improvement and maintenance of all of the roads and highways in said county, or to show cause on the third day of July, 1916, why they refuse so to do. To this writ the respondent board filed a demurrer. Upon hearing had, the trial court sustained the demurrer of respondents, quashed the alternative writ and denied the peremptory writ prayed for. This appeal is prosecuted from said judgment. The appellants assign and rely upon three assignments of error:

First, the court erred in sustaining respondent's demurrer;

Second, the court erred in rendering judgment quashing the alternative writ of mandate; and

Third, the court erred in denying and refusing to issue the peremptory writ of mandate as prayed for.

All of the above assignments of error will be discussed together.

From the foregoing brief statement of facts it will appear that the main questions presented under the foregoing assignments of error for our consideration and determination

are, must the board of county commissioners annually levy a general property tax on all taxable property of the county for the express purpose of meeting the expense necessarily incurred in the proper maintenance and improvement of all of the established public roads within the county? Or is it compulsory upon each road district in the county to petition each year for the levy of such a special property road tax on the taxable property of the district as a majority of the resident taxpayers shall deem necessary for that purpose?

It is admitted in this case that Latah county has not availed itself of its option to come within the provision of Session laws of 1909, page 274, known as the county road system. That being true, the provisions of the law as found in title 7 of the Revised Codes and the amendments thereto must be resorted to for the purpose of determining the validity of the action of the board of county commissioners in refusing to levy a general property tax on the assessed valuation of all of the taxable property in Latah county at a rate sufficient to cover the expense necessarily incurred in the maintenance and improvement of the established public roads and highways within the county.

Sec. 874a, Sess. Laws 1911, page 167, provides: "The improvement of highways is hereby declared to be the established and permanent policy of the state of Idaho; and the duty is hereby imposed upon the boards of county commissioners in their respective counties of improving and maintaining the public highways within their jurisdiction and of securing as rapidly as the public revenues will permit and of maintaining permanent good·roads of hard surface and properly graded and available for convenient travel thereon throughout the year."

In adopting and carrying out the policy expressed in the foregoing provisions of the statute, the legislature has enacted from time to time the following provisions:

Sec. 882, Rev. Codes, *inter alia* provides: "The board of county commissioners by proper ordinance must . . . . levy a property road tax to be paid into the county road fund. . . . . "

Sess. Laws 1913, page 203, sec. 99, among other things provides: "The board of county commissioners of each county in this state must levy annually upon all of the taxable property of said county a tax for general county purposes to be collected and paid into the county treasury and apportioned to the county current expense fund . . . . and *upon the same property* and for the same year the said board must also levy a tax for general road purposes to be collected and paid into the county treasury and apportioned to the county road fund, except as otherwise provided by law, which levy shall not exceed twenty-five cents on each one hundred dollars of such assessed valuation." The words, "except as otherwise provided by law," refer to subd. 6 of sec. 882, Rev. Codes, and to Sess. Laws 1913, page 524, sec. 900, which provide that at least twenty-five per cent should be set aside and appropriated to the road district fund where collected. (*Genesee v. Latah County,* 4 Ida. 149, 36 Pac. 701.)

It is further provided by sec. 896, Sess. Laws 1911, page 162, that "The board of commissioners must each year, at the meeting at which they are required to levy the property tax for county purposes, estimate the probable amount of property tax for road purposes and the probable amount of property tax for bridge purposes which may be necessary for the ensuing year over and above any road poll tax which may have been levied, and must regulate and fix the amount of property road tax and the amount of property bridge tax, and levy the same thereby."

Sec. 900, Rev. Codes, as amended by Sess. Laws 1913, page 524, provides: "The tax for general road purposes must be levied by the board of county commissioners at their session when the tax is by them levied for county purposes and must be collected by the same officers and in the same manner as other state and county taxes are collected, and paid into the county treasury and apportioned to the county road fund, except that twenty-five per cent of that portion of such tax which shall have been levied upon property within the limits of any incorporated city, town or village must be apportioned to such city, town or village; and if there be within the

county any taxing district organized under any law of this state providing for the apportionment of any portion of such tax to such taxing district, that portion of such tax which may have been levied upon property within the limits of such taxing district shall be paid and applied as provided in such law.''

The legislature has conferred upon boards of county commissioners exclusive jurisdiction over the public roads and highways in their respective counties, for the purpose of the expenditure of the public revenue available each year for the improvement of the public roads and highways, the establishment and laying out of new roads, the purchase of necessary machinery in the construction of roads, and the payment of the salary of road overseers. To determine the amount necessary to be raised for these purposes, section 882a of the Revised Codes provides: ''It shall be the duty of each of the county commissioners of this state personally to visit and inspect all roads and highways in the commissioner's district from which he was elected, on or before the first Monday in February of each year . . . . and also on the first Monday in September of each year; and he shall give to the several road district overseers in the county specific instructions as to the work to be done therein. . . . . Said commissioners shall require the said overseers to keep and maintain all the roads in their several districts in good repair, and shall exercise full and complete authority over all roads and overseers of his district; they shall submit a report in detail at each quarterly meeting of the board of county commissioners of the work done and materials used in their several districts, and an approximate estimate of the money needed for improvements upon the roads and highways therein for the ensuing quarter. Said commissioners shall meet in special session on the second Monday of May and September of each year, for the consideration of questions pertaining to the public roads of their respective districts, and each member of said board of county commissioners shall submit a report showing the conditions of the public roads and highways in his district, and the work needed, with an estimate of the cost to be incurred; and the

board of county commissioners shall, at said special meetings, *make provision* for the necessary improvements on the public roads and highways of the county. . . . . Any county commissioner who shall wilfully or negligently fail to perform any of the duties or requirements herein contained shall be subject to a fine of not less than fifty dollars nor more than two hundred dollars, to be recovered upon his official bond by action brought by the prosecuting attorney of the county wherein said commissioner resides.''

It was no doubt the intention of the legislature by the enactment of the foregoing provisions to enable the various boards of county commissioners intelligently to fix the rate of levy for road purposes within their respective counties, as well as to require boards of county commissioners to provide a sufficient fund by general levy, in order that all of the public roads and highways within their respective counties might be kept in good condition for public travel and substantially improved as rapidly as consistent with the financial prosperity of the people within the respective counties.

To further emphasize the power and duties of boards of county commissioners with reference to the public roads in their respective counties, the legislature by express enactments has conferred upon them exclusive supervision and jurisdiction over all of the highways within their respective counties, except such public roads and highways as are within the territorial limits of incorporated cities, towns and villages, highway districts, and good road districts, with full power to construct, maintain, repair and improve all highways within the county, whether directly by their agents and employees or by contract.   (Sec. 882b, Sess. Laws 1911, page 167.)

It is quite clear to our minds that the statutory provisions hereinbefore cited and referred to, touching the duties of boards of county commissioners over the public roads and highways of their respective counties, are mandatory, and that the commissioners are required to levy a general property tax annually on the assessed valuation of all the taxable property in their respective counties for the maintenance and improvement of the established public roads and highways

therein, as well as for other purposes necessarily connected with, or incidental to, the maintenance of good roads; that the tax so levied is to be collected and paid into the county treasury and apportioned as provided by law to the county road fund, but which levy shall not exceed twenty-five cents on each one hundred dollars of such assessed valuation, and that at least twenty-five per cent of the fund collected in any road district must be expended within that district. (*Genesee v. Latah County,* 4 Ida. 141, 36 Pac. 701.)

It is contended on behalf of the board of county commissioners, respondents herein, that they are relieved from a compliance with the foregoing provisions of the statute heretofore cited, by reason of sec. 901, Rev. Codes, as amended by the extraordinary session of the legislature, Sess. Laws 1912, page 47, and as again amended by sec. 901, Sess. Laws 1913, page 522, which provides: ''That when a majority of the resident taxpayers of any road district in such county, at, or before the time of making such levy, shall have petitioned such board of county commissioners for the levy of a special property road tax for their particular district, then the said board of county commissioners shall levy a special property road tax at such rate as in the petition set forth therefor, not exceeding twenty-five (25) cents on each one hundred dollars ($100.00) of the assessed valuation on all of the taxable property in such district.  The proceeds of such special property road tax shall be expended only within the district, or for the benefit of the district from which it was collected: *Provided,* that whenever a majority of the resident taxpayers of any district shall have petitioned the board of county commissioners for the levy of a special property road tax, and at the same time have embraced or included in said petition a request that said special tax when so levied may be paid by labor upon the highways in their district, the board of county commissioners shall spread upon their minutes an order directing that the special property road tax so petitioned for and levied may be paid by labor by the taxpayers in said district. . . . . The imposition of the special property road tax authorized by this section is not an essential or in-

tegral part of the highway system provided for by this act and the imposition of any such tax shall always be discretionary with the board of county commissioners.''

The foregoing provisions of the statute do not require a majority of the resident taxpayers in any road district to petition the board of county commissioners for the levy of a special property road tax to be expended within their particular district, and to sustain the contention of the board, namely, that they are only required to make a general levy for road purposes in an amount sufficient to meet the probable cost and expenses necessary for the establishment and laying out of new roads, the purchasing of road machinery, and the payment of the salaries of road overseers, would result in a lack of uniformity in the levy for road purposes and in the amount of money raised and expended in the various road districts. We think it will be conceded that the property of a road district cannot be subject to a special tax for general county purposes, and that it must also be conceded that public roads and highways are constructed for and should be maintained by the county at large, and that the inhabitants of any road district should not be compelled to pay a special tax for the maintenance and improvement of the public roads and highways generally within the county. Should the contention of respondents be sustained, it would no doubt result in not only a lack of uniformity in levies for road purposes, but would also result in the public roads and highways not being kept in good condition throughout the entire county. In one district a majority of the resident taxpayers, prompted by civic pride, would petition the board of county commissioners to levy a special property road tax for road purposes to be expended within their district, while a majority of the resident taxpayers of an adjoining road district may reach the conclusion that no matter what the conditions of the roads might be in their district, they would not petition the board of county commissioners to levy a special property road tax to be expended within their particular road district. Thus we would have good roads in one district and bad roads in another; a maximum levy in one

district for road purposes and a minimum levy or no levy in another; while the public roads throughout the entire county would be used by all of the inhabitants of the county, as well as the traveling public generally, and the commissioners would be powerless to remedy this condition. It is therefore clear to our minds that it was the intention of the legislature to permit a majority of the resident taxpayers of any road district to petition at their option in the manner provided by sec. 901, Sess. Laws 1913, *supra,* for a special levy for road purposes to be expended in their particular district in addition to any amount that they would be entitled to receive under an equitable distribution of the moneys paid into the county road fund as a result of a general levy made for road purposes as provided by subd. 7, sec. 882, Rev. Codes, as amended by sec. 99, Sess. Laws 1913, page 203; sec. 896, Sess. Laws 1911, page 162; and sec. 900, Sess. Laws 1913, page 524.

It will be observed upon a reading of sec. 901, Sess. Laws 1913, page 522, that a majority of the resident taxpayers of any road district may at their option petition the board of county commissioners to levy a special property road tax for that particular district, and that it is also expressly provided that "the imposition of the special property road tax authorized by this section is not an essential or integral part of the highway system provided for by this act, and the imposition of any such tax shall always be discretionary with the board of county commissioners." It is clear, therefore, that a majority of the resident taxpayers may or may not petition the board of county commissioners to levy a special property road tax to be expended within their particular district, and it is further apparent that the levy of the tax or refusal to levy the same rests wholly within the discretion of the board of county commissioners, and that it was not the intention of the legislature that these special levies should be considered by the commissioners in fixing the amount of the general levy or they would not have used the expression that "the imposition of such special levies is not an essential or integral part of the highway system." It was never intended that there should be such uncertainty attached to the raising of funds

necessary for the construction, improvement and maintenance of the public roads and highways within the various counties of this state, and it is also clear from the several sections of the statutes heretofore cited that the legislature contemplated that the construction, maintenance and improvement of all of the public roads throughout the county should be provided for primarily by a general levy made for that purpose, to be estimated and determined by the commissioners as provided by sec. 882a, Rev. Codes, as amended by sec. 896, Sess. Laws 1911, page 162.

It therefore follows from what has been said that the judgment of the trial court in sustaining the respondent's demurrer and entering judgment quashing the alternative writ of mandate, and in denying and refusing to issue the peremptory writ of mandate as prayed for by appellants, should be reversed and a peremptory writ of mandate issue in accordance with the order heretofore made, addressed to the respondents herein, commanding them to levy on or before the third Monday in September, 1916, a sufficient tax upon all the taxable property in said county, not exceeding twenty-five cents on each one hundred dollars of assessed valuation, to provide for all general road purposes in said county, including the necessary working, improvement and maintenance of all the roads and highways in said county, twenty-five per cent of such amount so raised to be expended in the respective road districts where it is raised, and to be exclusive of any amount raised upon petition for levy of a special property road tax in any particular road district.

The judgment of the trial court is reversed. Costs awarded to appellants.

Sullivan, C. J., concurs.

Morgan, J., did not sit at the hearing or take any part in the decision of this case.